IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ANDREW A. FRANCH AND HANNAH** | § | |
| **SUN-HYUN KIM,** *individually and as* | § | |
| *Trustee of the Andrew A. Franch Living Trust*, | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | |
| | § | Civil Action No. **3:14-CV-3247-L** |
| **HP LOCATE, LLC**, *a Texas Limited* | § | |
| *Liability Company*; **HP LOCATE, LLC**, | § | |
| *a Texas Limited Liability Company d/b/a* | § | |
| *HP Debt Exchange, LLC*; **AND HP DEBT** | § | |
| **EXCHANGE, LLC**, *a Texas Limited* | § | |
| *Liability Company*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is the Motion of Plaintiffs for Summary Judgment Against Defendants (Doc. 36), filed May 15, 2015; and the Objection and Motion of Plaintiffs to Strike Affidavit of Christopher D. Ganter in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment (Doc. 54), filed July 23, 2015. After careful consideration of the motions, briefs, summary judgment evidence, and applicable law, the court, for the reasons stated herein, **grants in part and denies in part** the Motion of Plaintiffs for Summary Judgment Against Defendants (Doc. 36), which includes a request for attorney's fees. Plaintiffs' summary judgment motion is **granted** with respect Plaintiffs' contract claims (Counts I and II) and request for turnover and foreclosure of the collateral pledged as security (Count III) against Defendants. Plaintiffs' request for an accounting is **denied.** Plaintiffs' request for attorney's fees in the amount of $7,080 and costs totaling $131 is **granted**. Plaintiffs' request for attorney's fees is otherwise **denied**. The court also **overrules as moot** the

**Memorandum Opinion and Order – Page 1**

Motion of Plaintiffs to Strike Affidavit of Christopher D. Ganter in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment (Doc. 54).

## I.    Factual and Procedural Background

On September 9, 2014, Plaintiffs Andrew A. Franch and Hannah Sun-Hun Kim, individually and as trustees of the Andrew A. Franch Living Trust (collectively, "Plaintiffs") brought this action against Defendants HP Locate, LLC ("HP Locate"); Defendant HP Locate, LLC d/b/a HP Debt Exchange, LLC; and HP Debt Exchange, LLC ("HP Debt") (collectively, "Defendants").   In their First Amended Complaint ("Amended Complaint"), Plaintiffs allege claims pertaining to breach of a Secured Promissory Note ("Note") and seek the turnover and foreclosure of collateral pledged by HP Locate to secure the Note.   Plaintiffs seek a judgment, jointly and severally against Defendants, in the amount of $184,958.90, which consists of the amount of unpaid principal under the Note, together with turnover and foreclosure of the collateral pledged as security.   Plaintiffs also seek $7,080 in attorney's fees, costs, an accounting, and postjudgment interest.

In their Answer to Plaintiffs' Complaint, Defendants asserted as a defense to Plaintiffs' claims that the contract between them is illegal and void, or voidable, because it violates Chapter 305 of the Texas Finance Code's prohibition against usurious interest rates.   Plaintiffs filed their Amended Complaint in an attempt to cure the usurious interest rate charged in the Note as permitted under the Texas Finance Code.   Plaintiffs attempted to do this by modifying the Note and providing Defendants with notice of the modification.   In their Answer to Plaintiffs' Amended Complaint

("Answer"),[1] Defendants continue to maintain that the Note is illegal and void or voidable because it violates Chapter 305 of the Texas Finance Code's prohibition against usurious interest rates.

On May 15, 2015, Plaintiffs moved for summary judgment on their claims for breach of the Note and turnover and foreclosure of the collateral pledged by Defendants to secure the Note. As indicated, Defendants generally contend in response that the Note is illegal and void or voidable due to the usurious interest rate charged. Defendants in effect contend that Plaintiffs cannot "unring the bell" by amending the Note and their pleadings to cure the violation. Defendants also assert that Plaintiffs have not suffered any damages as a result of HP Locate's default under the Note because they were offered the collateral pledged in the Note as a security interest. Plaintiffs' reply brief focuses on what is perceived as Defendants' oral contract or oral modification defense; the untimely amendment in this regard; and statute of frauds as a bar to oral modification. Plaintiffs also contend that, even though the Note is secured, they are not limited to recovery of the security in enforcing the Note. Plaintiffs continue to maintain that their amendment to the Note cured the usury violation.

On October 29, 2015, the court directed Plaintiffs to file a supplemental brief supported by legal authority and evidence that addresses the basis for holding all three Defendants liable for the claims asserted by them when the parties' evidence indicates that HP Locate is the only Defendant that is a party to the Note and owner of the collateral pledged in support of the Note. The court also

---

[1] Plaintiffs contend that Defendants did not timely amend or seek leave to amend their answer to allege the defense of oral modification of the Note and should not be allowed to rely on the defense in response to Plaintiffs' summary judgment motion. Defendants' Answer to Plaintiffs' Amended Complaint was not timely filed, in that it was filed more than 21 days after Plaintiffs amended their pleadings; however, Defendants' original and amended answers are substantially similar, and neither includes the defense of oral modification or oral contract. The court, therefore, assumes that Plaintiffs' contention pertains to Defendants' assertion in response to the summary judgment motion that, upon default, Plaintiffs were limited to recovering the collateral pledged in support of the Note. As herein explained, the court need not address this issue because Defendants' defense, contention, and evidence in this regard fail for other reasons. Further, because the original and amended answers as written are substantially similar, the court concludes that Plaintiffs will not suffer any prejudice even if the court were to consider Defendants' amended answer, as written, in ruling on the summary judgment motion.

**Memorandum Opinion and Order – Page 3**

gave Defendants an opportunity to respond to Plaintiffs' supplemental brief but no response was filed. As explained below, Plaintiffs' supplemental brief, cited authority, and evidence addressed the court's concerns such that the court concludes that Plaintiffs are entitled to judgment on their claims against all three Defendants, except for their request for an accounting.

## II.   Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense

to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

III.     **Undisputed Facts**

1.      Plaintiffs are the trustees of the Andrew A. Franch Living Trust created on July 21, 2011.

2.      On November 14, 2011, Plaintiffs extended credit to HP Locate in the amount of $200,000.

In exchange, HP Locate, as "Company," executed and delivered to Plaintiffs, as "Holder[s],"

a Note in the amount of $200,000, which was to be repaid at an interest rate of 30% interest

per annum "but not in excess of any amounts permitted by law." Pls.' App. 115.  Pursuant

to the Note, HP Locate promised to make monthly payments due on the first day of each

month starting on December 1, 2011, and continuing through May 1, 2012, until the Note

was paid in full.

3.      The Note provides with respect to security:

> 2.     Security. The Note shall be secured by unsecured second lien mortgage debt portfolios owned by Company ("Portfolios"). The Portfolios shall, at all times through Maturity Date, consist of Fifty Million Dollars ($50,000,000.00) of Unsecured Second Lien Mortgages from the HP Debt Exchange Portfolios, as further described on Schedule A hereto. The security shall be evidenced by a blanket UCC-1 filing against the applicable Portfolios. All revenue generated by the portfolio(s) will be escrowed with HP Locate, LLC until the note is repaid in full and shall serve as additional security for this Note.

> Pls.' App. 115-116.

4.      Regarding default, the Note further provides:

> 4.     Events of Default: If any of the events specified in this Section shall occur (herein individually referred to as an "Event of Default"), the Holder may, so long as such condition exists, in addition to any other right, power or remedy granted to the Holder under this Note, the Subscription Agreement, or applicable law, either by suit in equity or by action at law, or both, declare the entire principal amount (and accrued interest thereon) and all other amounts immediately due and payable, without presentment, demand or notice of any kind, all of which are expressly waived, provided, however, that upon the occurrence of any Event of Default described in Section 4(c) or 4(d) hereof, the entire principal amount (and accrued interest thereon) and all other amounts shall automatically become due and payable:

(a) Failure to pay any portion of the principal of this Note or interest accrued thereon when due, provided however, any payment not more than ten (10) days overdue shall not cause default hereunder;

*Id.* at 116.

5.      Pursuant to paragraph 5(a) of the Note, the Note and its terms may only be changed or amended by the written consent of HP Locate and Plaintiffs.

6.      Paragraph 5(g) of the Note provides:

(g)     Severability.  In case any provision contained herein (or part thereof) shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or other unenforceability shall not affect any other provision (or the remaining party of the affected provision) hereof; but this Note shall be construed as if such invalid, illegal, or unenforceable provision (or part thereof) had never been contained herein, but only to the extent that such provision is invalid, illegal, or unenforceable.

*Id.* at 118.

7.      Plaintiffs fully performed all conditions precedent under the Note by advancing $200,000 to HP Locate as contractually agreed.

8.      HP Locate defaulted by failing to perform its monthly payment obligations under the Note. HP Locate only made the three following payments under the Note, totaling $15,041.10: (1) $4,849.32 on December 21, 2011; (2) $5,095.89 on January 19, 2012; and (3) $5,095.89 on February 27, 2012.

9.      On July 30, 2014, and August 15, 2014, Plaintiffs provided notice of HP Locate's default and Plaintiffs' acceleration of the amounts due under the Note in writing to Defendants and demanded immediate payment of the remaining principal balance ($184,958.90).

10.     HP Locate did not subsequently make or attempt to tender any amounts due under the Note.

11.     On October 14, 2014, Defendants notified Plaintiffs that they engaged in usury by "lending

monies to Defendant at the usurious rate of 30%" in violation of the Texas Finance Code.

Defs.' Original Answer 5.

12.     Thereafter, Plaintiffs pursued corrective action under the Texas Finance in an attempt to cure

the alleged usury violation and notified Defendants in writing of their efforts in this regard

on November 7, 2014.

13.     According to public records on file with the Texas Secretary of State, HP Locate has been

doing business in Texas under the assumed name of HP Debt Exchange, LLC since January

15, 2014, and the court takes judicial notice of this fact.

## IV.     Plaintiffs' Summary Judgment Motion

### A.     Plaintiffs' Contract Claim (Counts I and II)

The elements of a breach of contract claim under Texas law are: "(1) the existence of a valid

contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the

defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v.

Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citation omitted).  "A breach of contract occurs

when a party fails to perform an act that it has expressly or impliedly promised to perform." *Case

Corp. v. Hi-Class Bus. Sys.*, 184 S.W.3d 760, 669-70 (Tex. App.—Dallas 2005, pet. denied). The

court determines as a matter of law what the contract requires of the parties.  *See Meek v. Bishop

Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

When the terms of a contract are clear and unambiguous, and the facts concerning breach or

performance are undisputed or conclusively established, the issue of whether the facts show

performance or breach is also decided as a matter of law. *Id.* When the evidence shows that an entity

is doing business under an assumed business name, the entity may be held liable under its assumed business name even if it did not sign the contract that is the subject of the suit using the assumed business name. *Broemer v. Houston Lawyer Referral Serv.*, 407 S.W.3d 477, 482 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Plaintiffs have come forward with sufficient evidence to satisfy their burden as the summary judgment movant with respect to Defendants and their breach of contract claims (Counts I and II) and their claim to enforce and foreclose on the security interest in the collateral identified in the Note (Count III). In support of their contract claim, Plaintiffs presented evidence that a Note for $200,000 was executed between Plaintiffs and HP Locate; that Plaintiffs performed by loaning HP Locate $200,000; that HP Locate failed to make the required monthly payments under the Note; and Plaintiffs were injured in the amount of the balance remaining under the Note. Plaintiffs also presented evidence that HP Locate has been doing business in Texas under the assumed name of HP Debt Exchange, LLC.

Plaintiffs have, therefore, met their summary judgment burden as the movant on their breach of contract claim (Counts I and II) as to all Defendants, and the burden shifts to Defendants to raise a genuine dispute of material fact with respect to Plaintiffs' contract claim. Defendants rely on the same defenses and evidence in response to all of Plaintiffs' claims for relief. The court, therefore, addresses them after determining whether Plaintiffs have satisfied their summary judgment burden as to Count III.

**B.** **Plaintiffs' Request for Turnover and Foreclose of Security Interest (Count III)**

In *Crow-Southland Joint Venture No. 1 v. North Fort Worth Bank*, 838 S.W.2d 720 (Tex. App.— Dallas 1992), writ denied), the Dallas Court of Appeals explained as follows regarding security interests and financing statements:

> A security interest is an interest in personal property or fixtures that secures the payment or performance of an obligation." Tex. Bus. & Com. Code Ann. § 1.201(37) (Vernon Supp. 1992). Generally, a security interest is created by a written agreement that contains a description of the collateral. *Id.* § 9.203(a)(1). Any description of personal property is sufficient if it reasonably identifies what is described. *Id.* § 9.110.
>
> A financing statement must be filed to perfect a security interest in personal property in the possession of the debtor. *Id.* § 9.302. The financing statement must: (1) give the names of the debtor and secured party; (2) be signed by the debtor; (3) give an address of the secured party from which information concerning the security interest may be obtained; (4) contain the mailing address of the debtor; and (5) contain a statement indicating the types, or describing the items, of collateral. *Id.* § 9.402(a). Substantial compliance is sufficient to satisfy the requirements of section 9.402. *Id.* § 9.402(h).
>
> Security agreements and financing statements serve different purposes. The security agreement defines the collateral to enable the debtor and other interested persons to identify the property that the creditor may claim as security. *Thorp Commercial Corp. v. Northgate Indus., Inc*., 654 F.2d 1245, 1248 (8th Cir. 1981); *Villa v. Alvarado State Bank*, 611 S.W.2d 483, 486 (Tex. Civ. App.—Waco 1981, no writ). Accordingly, the security agreement must describe the collateral. Tex. Bus. & Com. Code Ann. § 9.203(a); *Thorp*, 654 F.2d at 1248. The financing statement, on the other hand, merely serves to notify third parties that the debtor's property is or may be encumbered. Tex. Bus. & Com. Code Ann. § 9.402 comment 2; *Marine Drilling Co. v. Hobbs Trailers*, 697 S.W.2d 831, 833 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.). . . . The description of collateral in the financing statement does not serve to identify the collateral and define property that the creditor may claim as security—it simply warns others of the prior security interest. *Thorp*, 654 F.2d at 1248; *Marine Drilling*, 697 S.W.2d at 833. Thus, the financing statement may describe the items of collateral or merely designate the types of collateral. Tex. Bus. & Com. Code Ann. § 9.402(a); *Thorp*, 654 F.2d at 1249 & n. 6.

*Id.* at 723-24.

Plaintiffs' evidence establishes that a security interest was created by a written agreement (the Note), and the description of the collateral (the Portfolios and revenue generated by the Portfolios) is reasonably identified in the Note and Schedule A to the Note, which provides account information for each mortgage in the Portfolio. Plaintiffs have, therefore, met their summary judgment burden as to this claim by showing that they have an enforceable security interest in the collateral described in the Note and Schedule A.[2] Further, Defendants did not present any evidence to dispute the existence of Plaintiffs' security interest in the collateral. As explained below, Defendants instead acknowledge the existence of the security interest and merely contend that Plaintiffs' damages for breach of the Note should be limited to recovery of the collateral. Thus, the only issue remaining is whether Defendants' arguments and evidence are sufficient to create a genuine dispute of material fact with respect to Plaintiffs' claims.

### C.      Defendants' Defenses and Evidence

#### 1.      Usury

As previously noted, Defendants contend that the Note is void or voidable in its entirety for illegality because it violates the prohibition under Texas law against usury interest rates. Defendants assert that Plaintiffs' usury violations raise a genuine dispute of material fact as to whether the Note is a valid enforceable contract.

---

[2] While the Note states, "[t]he security shall be evidenced by a blanket UCC-1 filing against the applicable Portfolios," Pls.' App. 116, there is no evidence that the UCC-1 financing statement was ever filed. As previously noted, however, a financing statement simply serves the purpose of warning third parties of a prior security interest. This case does not involve competing interests in the collateral at issue, so the lack of evidence regarding a financing statement is of no moment and does not affect Plaintiffs' right to enforce their security interest in the collateral described in the Note and Schedule A.

It is a violation of the Texas Finance Code to contract for, charge, or receive interest that is greater than the amount authorized by law.  Tex. Fin. Code Ann. § 305.001 (West 2006). Usury statutes are penal in nature and are to be strictly construed.  *First Bank v. Tony's Tortilla Factory, Inc.*, 877 S.W.2d 285, 287 (Tex. 1994).  "The question of whether usury exists is ascertained from the dominant purpose and intent of the parties embodied in the contract interpreted as a whole and in light of attending circumstances and of the governing rules of law that the parties are presumed to have intended to obey." *Berine's Custom Coach of Texas Inc. v. Small Bus.Admin. and Gulf Am. SBL, Inc.*, 987 F.2d 1195, 1197-98 (5th Cir. 1993) (citation omitted).  "In determining whether a contract is usurious, the Texas Supreme Court has held that 'it will be presumed that the parties intended a nonusurious contract.'" *Id.* at 1197 (quoting *Smart v. Tower Land and Invest. Co.*, 597 S.W.2d 333, 341 (Tex. 1980)); *see also Myles v. Resolution Trust Corp.*, 787 S.W.2d 616, 618 (Tex. App.—San Antonio, 1990, no writ) ("Unless the contract by its express and positive terms evidences an intention [that] requires a construction that unearned interest is to be collected in all events, the court will give it the construction that the parties intended that the unearned interest should not be collected").  If a "note is susceptible to more than one reasonable interpretation," the court "must adopt the construction that comports with legality" unless the party alleging a usury violation rebuts the presumption that the parties intended to act lawfully.  *Berine's Custom Coach of Texas Inc.*, 987 F.2d at 1199.

Under Texas law, the party making a claim of usury has the burden of proof. *Ravkind v. Mortgage Funding Corp.*, 881 S.W.2d 203, 205-06 (Tex. App.—Houston [1st Dist.] 1994, no writ); *Amaya v. First State Bank of San Diego*, 570 S.W.2d 95, 96 (Tex. Civ. App.—San Antonio 1978, no writ).  A usury violation requires proof of three elements: "(1) a loan of money, (2) an absolute

obligation to repay the principal, and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower." *Tony's Tortilla*, 877 S.W.2d at 287; *C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*, 61 F.3d 288, 289 (5th Cir. 1995).  Section 305.001 of the Texas Finance Code sets forth the various penalties for a creditor who is found liable for contracting for, charging, or receiving usurious interest.  A creditor is not liable to an obligor for a usury violation if the creditor cures the violation in accordance with section 305.103:

> (1) not later than the 60th day after the creditor actually discovered the violation, the creditor corrects the violation as to that obligor by taking any necessary action and making any necessary adjustment . . .; and

> (2) the creditor gives written notice to the obligor of the violation before the obligor gives written notice of the violation or files an action alleging the violation.

Tex. Fin. Code Ann. § 305.103.

Plaintiffs contend that the allegedly usurious interest rate charged in the Note was cured by their efforts in amending the Note.  Defendants, on the other hand, contend that, regardless of whether Plaintiffs cured the usury violation, the contract remains voidable.  Defendants further assert, based on *Berine's Custom Coach*, that the severability or savings clause in paragraph 5(g) of the Note does not save the contract from being void or voidable because this provision is insufficient to rehabilitate the usurious intent of Plaintiffs.

Both parties' usury arguments are somewhat flawed.  The court, however, determines for the reasons that follow that this issue does not preclude Plaintiffs from recovering the outstanding principal under the Note and foreclosing on the collateral.  As previously noted, Plaintiffs contend that they cured any usury violation.  Plaintiffs, however, concede in their summary judgment motion and evidence that they did not attempt to cure the alleged usury violation until *after* Defendants

raised the issue in their Answer.  Section 305.103, on the other hand, requires that "the creditor give[] written notice to the obligor of the violation *before* the obligor gives written notice of the violation or files an action alleging the violation."  *Id.*  Thus, Plaintiffs have not satisfied section 305.103's requirements for curing usury violations.  Moreover, Plaintiffs' attempt at unilaterally amending the Note by notifying Defendants of their intention in this regard is expressly precluded by paragraph 5(a) of the Note, which requires the written consent of Plaintiffs and HP Locate for changes or amendments to the Note.  Plaintiffs acknowledge this limitation because they contend that Defendants could not orally modify the Note without the written consent of all parties to the Note.

Plaintiffs' unsuccessful efforts in curing the alleged usury violation, however, do not preclude them from enforcing the Note and recovering on their claims.  Although the Note includes an interest rate that exceeds that allowed by Texas law, the severability clause when read in conjunction with the Note's language that interest will not exceed that permitted by law is similar to and has the same effect of the savings clause in *Berine's Custom Coach* and the cases cited by it:

> The savings clause in the promissory note at issue defeats any construction finding the note to be usurious. In a case involving similar facts, *Rickman v. Modern American Mortg. Corp.*, 583 F.2d 155 (5th Cir.1978), *cert. denied*[,] 441 U.S. 962, 99 S.Ct. 2406, 60 L. Ed.2d 1066 (1979), the appellant argued that the exercise of an acceleration clause enabled the lender to extract usurious interest. Applying Texas usury law, we held that the appellant's argument must fail because "the effect of the savings clause in the contract cannot be overlooked." *Id.* at 158. The clause in *Rickman* provided that in no event would the borrower "be required to pay interest in excess of the rate allowed by the laws of the State of Texas." *Id.* at 158 note 4. Giving effect to the savings clause, we held that "when [the lender] pressed its demand for the full amount due under the contract, it claimed an amount automatically constricted within the bounds of the law thereby eliminating the possibility that illegal interest was claimed." *Id.* at 159. As the court explained, "because of the savings clause, the amount charged by the act [of] acceleration was automatically confined within permissible boundaries." *Id.* at 159 note 5.

**Memorandum Opinion and Order – Page 14**

> The savings clause in the instant case can be reasonably interpreted to have the same effect of the savings clause in *Rickman*. The note's savings clause, which provides that "the interest rate on this Note shall never exceed the maximum rate permitted by usury laws," automatically limited the amount of interest that the appellees could demand upon acceleration to an amount within the limits of the Texas usury laws.

*Berine's Custom Coach of Texas Inc.*, 987 F.2d at 1198.  Based on the reasoning in *Berine's Custom Coach*, the court similarly concludes that the severability clause and language in the Note that interest will not exceed any amounts permitted by law defeats Defendants' construction that the Note is usurious.  *See id.*  Moreover, Defendants' construction of the Note fails to focus on the contract as a whole and instead focuses solely on the 30% interest rate.[3]  *See Berine's Custom Coach of Texas Inc.*, 987 F.2d at 1197-98.  Defendants' proffered interpretation of the Note is, therefore, insufficient to rebut the presumption that the parties intended to act lawfully, and the court must adopt the construction of the Note that comports with legality.  *See id.*

Even assuming as Defendants contend that the interest rate charged in the Note is usurious, Plaintiffs would still be entitled to enforce the Note with respect to the principal owed and the security interest in the collateral.  Although Texas law considers a charge of more than twice the

---

[3] Defendants offered the affidavit of Christopher D. Ganter ("Ganter"), the Chief Executive Officer of Defendants.  Ganter also signed the Note on behalf of HP Locate.  Ganter states in his affidavit with respect to this issue as follows:

> The agreement [Note] as signed was in violation of the Texas Finance Code 305 and its restrictions on Usury. The preamble clearly indicated that the Note was to be paid back at a rate of 30% while interest rates for such Notes are capped at 18% in the state of Texas. The Plaintiffs were aware of this and continued to proceed with the signing [of] the Note. This made the Note voidable.

Ganter Aff. ¶ 4 (Doc. 47).  In addition to focusing solely on the 30% interest rate, a majority of the above statement by Ganter is not competent summary judgment evidence and insufficient to raise a genuine dispute of material fact because it contains legal conclusions and conclusory, unsubstantiated assertions.  *See Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir.1997) ("Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment.").  Accordingly, in ruling on Plaintiffs' summary judgment motion and the usury issue, the court only considers Ganter's statement that "[t]he preamble clearly indicated that the Note was to be paid back at a rate of 30%" and disregards the remainder of paragraph four of Ganter's affidavit.  Ganter Aff. ¶ 4.

maximum interest rate to be void for illegality, violations of the usury statute merely void for illegality the usurious interest, not the underlying obligation, and entitle the defendant to a setoff. *See FSLIC v. Griffin*, 935 F.2d 691, 700-01 (5th Cir. 1991) ("When the Texas Supreme Court has used the term 'void' in connection with usury, [it] seem[s] to imply only that the usurious interest is void. The Texas courts have not held that underlying obligation itself is void for illegality."); *Houston Sash and Door Co. v. Heaner*, 577 S.W.2d 217, 222 (Tex. 1979) ("The usury statute, furthermore, does not declare the underlying open account transaction void, but merely provides [defendant] a defensive setoff. It is only where the underlying obligation is void for illegality that a guaranty must fall with it.") (citations omitted).

An offset is actually a form of equitable counterclaim because it does not negate a party's claim but instead adjusts the indebtedness between the parties. *Capital Concepts Props. v. Mutual First, Inc.*, 35 F.3d 170, 175 (5th Cir. 1994) (interpreting Texas law); *Nalle v. Harrell*, 12 S.W.2d 550, 551 (1939) (explaining that the aim of an offset or setoff is "to adjust the indebtedness between the parties, and to permit executory process to be enforced only for the balance that may be due.") (internal quotation marks omitted); *Bright & Co. v. Holbein Family Mineral Trust*, 995 S.W.2d 742, 747 (Tex. App.—San Antonio 1999, pet. denied) (holding that the defendant's overpayments of royalties in one period did not negate the plaintiff's claim for nonpayment of royalties in another period, and thus amounted to a counterclaim, rather than an affirmative defense of offset).

Defendants, however, have not requested a setoff for the alleged usury violation or come forward with evidence or facts to show the amount upon which statutory damages for a usury violation under the Texas Finance Code should be based. Defendants instead merely contend that Plaintiffs cannot enforce the Note because the alleged usury violation voids the Note in its entirety

or makes it voidable.  Accordingly, Defendants would not be entitled to a setoff even if Plaintiffs had

contracted for, charged, or received usurious interest under the Note.  Moreover, Plaintiffs' decision

to amend their pleadings and not seek interest due under the Note or prejudgment interest in their

Amended Complaint moots any issue regarding setoff.  For all of these reasons, the court concludes

that Defendants have not met their burden with respect to their claim or defense of usury, and their

contentions regarding usury and illegality are insufficient to raise a genuine dispute of material fact

as to Plaintiffs' contract claim and whether a valid contract exists.

### 2.      Defendants' Offer of Collateral Pledged Under the Note to Cure Default

In response to Plaintiffs' summary judgment motion, Defendants contend that a genuine

dispute of material fact exists with respect to Plaintiffs' contract claim and whether they have

suffered any damages as a result of HP Locate's default under the Note.  Defendants contend that

Plaintiffs have not been damaged because: (1) the Note anticipates collateral in the form of

unsecured mortgages, and Plaintiffs had the right to accept and sell this collateral upon HP Locate's

default; (2) Plaintiffs were offered to collect the collateral as a cure but opted not to do so, and

Defendants cannot be responsible for Plaintiffs' decision to not do so and file this lawsuit; (3) the

security still exists, Plaintiffs can take possession of it and benefit from its value, and Plaintiffs have

not set forth any argument regarding a monetary deficiency based on assessment of the collateral.

For support, Defendants rely again on the affidavit of Ganter, who states:

> 5.      The Plaintiffs were allowed to do their due diligence and were fully
> aware of the nature of the business and the "Security" . . . that they accepted as
> collateral.  When the "default notices were received, the Plaintiffs were offered to
> accept their collateral as a cure, and as agreed but that was refused.

**Memorandum Opinion and Order – Page 17**

6.      It was the Defendant's understanding, entering this Note, that in the case of a default, the monies will be paid by turnover of the Security interest which was agreed upon as collateral to the loan.

Ganter Aff. ¶¶ 5-6.

Plaintiffs dispute any contention by Defendants that an oral modification of the Note occurred.  Plaintiffs assert that the Note cannot be amended or modified without both parties written consent.  Plaintiffs further assert that their remedies under the Note are cumulative and not limited to the collateral.  For support Plaintiffs rely on Section 9.601(a) of the Texas Business and Commerce Code.

For the reasons that follow, the court does not view Defendants' contentions or Ganter's affidavit as raising an issue regarding oral modification of the Note. Although Defendants' summary judgment brief and Ganter's affidavit are somewhat confusing as written, they clearly focus on the parties' intent and HP Locate's understanding of the terms of the Note when it was executed.  The court otherwise agrees with Plaintiffs' contention that they are not limited to enforcing their security interest in the collateral.

While Plaintiffs may have only one satisfaction, their remedies are cumulative.  *See* Tex. Bus. & Comm. Code Ann. § 9.601(a), (c) (West 2011) ("(a) After default, a secured party has the right provided in this subchapter and . . . those provided by agreement of the parties. A secured party: (1) may reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest . . . by any available judicial procedure. . . . (c) The rights under subsections (a) and (b) are cumulative and may be exercised simultaneously."); *see also Cohen v. Rains*, 769 S.W.2d 380, 384-85 (Tex. App.—Fort Worth 1989, writ denied) (concluding that remedies are cumulative and no election of remedies is required); *Hubbard v. Lagow*, 576 S.W.2d 163, 165 (Tex. Civ. App.—Austin 1979, writ

ref'd n.r.e.).   Thus, Plaintiffs may pursue both remedies and allowing them to recover the balance

due under the Note *and* foreclose on the security interest in the mortgage Portfolios and revenue

generated by the Portfolios will not result in a double recovery.   Moreover, the Note expressly allows

Plaintiffs, upon default by HP Locate, to declare the entire principal amount due and payable without

presentment, demand, or notice of any kind.   Accordingly, Plaintiffs decision to pursue both

remedies is permissible under Texas law and the Note, and their decision to pursue both is

insufficient to create a genuine dispute of material fact as to whether they have suffered damages due

to HP Locate's default under the Note.   That Defendants may have offered as a cure for their default

something to which Plaintiffs were already entitled under the Note is quite beside the point.

Defendants' reliance on Ganter's statement regarding his "understanding" of the Note at the

time it was executed to show that the parties agreed that Plaintiffs were limited to recovering the

collateral pledged in the Note is likewise unavailing.   Any such "understanding" by Ganter is

contrary to and inconsistent with the unambiguous language of the Note, which permits Plaintiffs

to recover the principal amount due and payable.   Because the Note is unambiguous in this regard,

the court is confined to the four corners of the Note in determining the parties' intent, *Texas v.

American Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006) (applying Texas law), and it cannot look

to extrinsic evidence to create an ambiguity.    *Hall v. Hubco, Inc.*, 292 S.W.3d 22 (Tex.

App.—Houston [14 Dist.] 2006, pet. denied) ("[P]arol evidence cannot be used to prove another

promise not contained in the contract" if such evidence is offered to contradict, vary, or add to the

terms of an otherwise unambiguous contract.).   Accordingly, the court does not consider paragraph

five or six of Ganter's affidavit in interpreting the Note and determining whether Plaintiffs are

limited to recovering the collateral pledged as security upon HP Locate's default.   Thus, Defendants'

**Memorandum Opinion and Order – Page 19**

evidence in this regard is insufficient to create a genuine dispute of material fact as to whether Plaintiffs suffered damages as a result of HP Locate's default, and Plaintiffs are entitled to judgment on their contract claim and request for turnover and foreclosure on the collateral identified and described in the Note and Schedule A to the Note.

**V.      Plaintiffs' Motion to Strike Affidavit of Christopher D. Ganter**

Plaintiffs contend that Christopher D. Ganter's affidavit is not competent summary judgment evidence and should be stricken. Alternatively, Plaintiffs contend that the paragraphs 1, 2, 4, 5, and 6 of Ganter's affidavit should be stricken on the grounds that the statements constitute improper legal conclusions; are speculative and made without personal knowledge; violate the best evidence rule; and contradict certain discovery answers and testimony. Defendants did not respond to Plaintiffs' objections.

The court has only considered evidence that is admissible pursuant to Rule 56 of the Federal Rules of Civil Procedure and the summary judgment standard herein enunciated. Moreover, for the reasons explained, Defendants' defenses are insufficient as a matter of law to raise a genuine dispute of material fact regarding Plaintiffs' contract claim and request for turnover and foreclosure on the collateral. Plaintiffs' objections are, therefore, **overruled as moot**.

**VI.     Plaintiffs' Request for an Accounting**

In their Amended Complaint, Plaintiffs request an accounting "regarding all proceeds from the Portfolio collected by Defendants that Plaintiffs own and hold a security interest." Pls.' Am. Compl. 15. In their summary judgment motion, Plaintiffs similarly request that Defendants be ordered to provide an "accounting of all proceeds collected [for which] Plaintiffs have a security

interest." Pls.' Mot. Summ. J. 24. Defendants did not respond to Plaintiffs' request for an accounting. For the reasons that follow, the court **denies** Plaintiffs' request for an accounting.

Requests for accounting are generally equitable in nature, and the discretion to grant an accounting is within the trial court's discretion. *Southwest Livestock & Trucking Co. v. Dooley*, 884 S.W.2d 805, 809 (Tex. App.—San Antonio 1994, writ denied). To be entitled to an accounting, a party usually must have a contractual or fiduciary relationship with the one from whom the party seeks the accounting. *T.F. W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). An accounting is "proper when the facts and accounts presented are so complex adequate relief may not be obtained at law." *Id.* If the party seeking an accounting "can obtain similar relief through standard discovery, the trial court may decline to order an accounting." *Id*.

Plaintiffs' evidence shows the existence of a contractual relationship with HP Locate, but Plaintiffs have not presented any evidence to show that the Portfolio accounts at issue are unusually complex. Moreover, Plaintiffs previously moved to compel such information, and their motion was granted by the magistrate judge on April 9, 2015. Pursuant to the magistrate judge's order, Defendants were required to produce the information requested by Plaintiffs by April 30, 2015. In support of their summary judgment motion, Plaintiffs produced the affidavit of Andrew Franch, who states that Defendants failed to comply with the magistrate judge's order; however, in the six months since the magistrate judge required production of the information sought by Plaintiffs regarding the Portfolio accounts, Plaintiffs have not sought to compel Defendants' compliance with the magistrate judge's order or sought other relief for Defendants' noncompliance. Accordingly, because Plaintiffs have not established that the facts and accounts are unusually complex to warrant an accounting, and

**Memorandum Opinion and Order – Page 21**

they had the opportunity to obtain the information sought through standard discovery but did not seek to enforce the magistrate judge's discovery order or other remedies for Defendants' noncompliance, the court declines to order an accounting of HP Locate's records.

## VII.   Plaintiffs' Request for Attorney's Fees

Plaintiffs request an award of reasonable attorney's fees in the amount of $7,080 and $131 in costs.  Plaintiffs also request an additional award in the amount of $32,700 for attorney's fees in the event of appeal.  The fees and costs requested by Plaintiffs do not include those sought by them in conjunction with a motion to compel discovery, which was referred to the magistrate judge assigned to this case.  Defendants did not respond to Plaintiffs' request for reasonable attorney's fees and costs.

In a diversity case, state law controls whether attorney's fees are recoverable and reasonable. *See, e.g., Mathis v. Exxon Corp*., 302 F.3d 448, 461 (5th Cir. 2002). Texas law permits an award of attorney's fees if authorized by statute or contract.  *See, e.g., Intercontinental Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009).  The Note provides with respect to "Costs of Collection" as follows: "The Company [HP Locate] shall reimburse Holder [Plaintiffs] for reasonable attorney's fees and expenses incurred in connection with enforcing any provisions of this Note and/or collecting any amounts due under this Note."  Pls.' App. 118.

The record reflects that Defendants' counsel, Herbert J. Gilles ("Mr. Gilles"), was responsible for this case and has been licensed by the State of Texas since 1982.  His hourly rate is $300.  The court has significant experience in awarding attorney's fees in various matters and is familiar with rates charged by attorneys in the Dallas legal community. The rates charged by Mr. Gilles are quite reasonable and customary for attorneys with his level of experience. Frankly, the fee of $300 is well

below the rate charged by attorneys in the Dallas legal community for an attorney with the level of ability and experience of Mr. Gilles.  Further, the record reflects that the hours and expenses expended were reasonable and necessary in an attempt to collect amounts due under the Note. Accordingly, the amount requested by Plaintiffs for reasonable attorney's fees and costs incurred will be awarded. The court, however, does not award attorney's fees for services rendered at the appellate level because it has no way of knowing the amount of services that would be reasonably and necessarily expended by Plaintiffs on appeal.  The amount of fees on appeal is speculative at this juncture.  If ordered to do so by the Unites States Court of Appeals for the Fifth Circuit, the court, of course, will make a determination as appropriate.

## VIII.   Conclusion

The court **concludes** that Defendants failed to raise a genuine dispute of material fact with respect to Plaintiffs' claims.  For the reasons stated, however, the court **grants in part and denies in part** the Motion of Plaintiffs for Summary Judgment Against Defendants (Doc. 36).  In particular, Plaintiffs' summary judgment motion is **granted** with respect Plaintiffs' contract claims (Counts I and II) and request for turnover and foreclosure of the collateral pledged as security (Count III) against Defendants.  Plaintiffs' request for an accounting is **denied.**  Plaintiffs' request for attorney's fees in the amount of **$7,080** and costs totaling **$131** is **granted**.  Plaintiffs' request for attorney's fees is otherwise **denied**.  The court also **overrules as moot** the Motion of Plaintiffs to Strike Affidavit of Christopher D. Ganter in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment (Doc. 54).

Accordingly, the court hereby **orders** that  judgment be entered in favor of Plaintiffs against Defendants jointly and severally in the amount of **$184,958.90** in damages, which consists of the

amount of unpaid principal under the Note, together with turnover and foreclosure of the collateral pledged as security.   Plaintiffs are also awarded reasonable attorney's fees and costs jointly and severally against Defendants in the amount of **$18,086,76**, which includes the attorney's fees and costs awarded in this opinion and $10,875 awarded to Plaintiffs in the court's prior opinion granting Plaintiffs' Application for an Award of Reasonable Attorney's Fees with respect to their motion to compel discovery. Defendants **shall** turnover by **December 16, 2015**, the Portfolios and all revenue generated by the Portfolios described in the Note and Schedule A to the Note.   Plaintiffs **shall** conduct an immediate foreclosure of the Portfolios, and the amount recovered for revenue generated by the Portfolios and the net proceeds from the sale of the Portfolios **shall** be credited against Plaintiffs' monetary award of $184,958.90.   Plaintiffs **shall** return to Defendants any amounts recovered that exceed $184,958.90.   As previously noted, Plaintiffs do not request prejudgment interest, and none is awarded.   Postjudgment interest on the total amount of damages awarded to Plaintiffs shall accrue at the applicable federal rate of **.41%** from the date of entry of the judgment until paid in full. The court will enter a judgment in favor of Plaintiffs by separate document pursuant to Rule 58 of the Federal Rules of Civil Procedure.

  **It is so ordered** this 16th day of November, 2015.

Sam A. Lindsay
United States District Judge